Good morning. May it please the court. I'm Doug Carlson. I am the petitioner proceeding pro se. And I appreciate the court's decision to grant expedited consideration of this appeal. And I would like to reserve three minutes for rebuttal. In October 2018, the Postal Service announced an increase in the basic price to mail a first class letter from 50 cents to 55 cents. This five cent increase is the largest in history. And as a percentage, this 10% increase is the largest since a 10.2% increase in 1991. In 2006, Congress enacted the Postal Accountability and Enhancement Act. The act required the Postal Regulatory Commission to create, by regulation, a system for regulating market dominant rates, including first class mail. Congress required the PRC to design a regulatory system that achieved nine specific objectives listed in Section 3622B and took into account 14 factors listed in Section 3622C. Pricing flexibility is only one of the objectives and factors. We're here today because the PRC failed to create and operate a regulatory system that applies the nine objectives and 14 factors. The PRC failed on two levels. First, the PRC's regulations – You're challenging the specific price increase. You'd be out of time to make a facial challenge to the regulatory system they adopted, wouldn't you? I'm sorry, can you – You'd be out of time. They adopted the regulatory system. You're outside the statute of limitations for that. You can only attack it as applied through this rate increase, correct? That's correct. I'm attacking the regulatory system through this increase. Okay. And then, just to be clear on one thing, which I assume is obvious, but we always have to confirm our standing in the case, I assume you are a purchaser of first class stamps? Yes, I am a mailer. And so I'm aggrieved by order number 4875. Mr. Hulser, as you – just to clarify your previous response, are you challenging also the underlying regulation? Well, I believe that the underlying regulation does not properly implement the statute. This court certainly can decide the case on those grounds, but if the regulation is deemed to be in C issues, the commission abused its discretion and the order was arbitrary and capricious. Do you believe that the challenge to the underlying framework regulation is properly before us now? I do, because the commission used its regulatory scheme to issue order 4875 and to decide the case on this increase. And there is a – So it's an as-applied challenge? I can't say that. It's an as-applied challenge? That's right. That's right. And the Supreme Court did say that a regulation's age is no antidote to clear inconsistency with the statute in Brown v. Gardner. So even though this issue hasn't come up, to the best of my knowledge, in the last 12 or 13 years, this also is a unique case because the Postal Service implemented an increase of 10 percent for first-class mail, first-class letters, and stamp first-class letters. That's more than four times the CPI. And that has not been a typical result, or I'm not sure it's ever happened since the PAEA has been implemented, except in the one case that the commission cites in its brief. So I think the expectation of Congress when the statute was implemented was that the Postal Service would comply, but they were allowed to make some deviations. But here we have 10 percent increase for stamp first-class letters and less than 1 percent for pre-sort letters. And that's a major difference. And so it shouldn't be surprising that this case has triggered a question about the underlying regulatory scheme and how the commission's implemented it. The statute clearly requires consideration of these objectives, system objectives, but where does it clearly require consideration of those objectives in the ex ante approval of a rate increase as opposed to in various other contexts like the 10-year study, the one-year assessment, or the response to a complaint? And so the system itself to regulate the rates has to consider the objectives and factors in 3622B and C. And so if not, the way the commission's designed the system, the only place that that system can consider those issues is in reviewing a particular price increase that the Postal Service has announced. Well, but they can do that just as well, as I understand it. They review, by statute, they have to review the rate increases every year in a more detailed proceeding where they have more time, they have more information, they have remedial authority to adjust prices if they find that the increase was too much. Why couldn't the commission channel this set of issues to that form of review rather than this quick and dirty 45-day separate review on the front end? Well, I think they could if the statute had been written that way. And I think it's worth imagining what would the statute have looked like if Congress didn't want the commission considering Section 3622B and C issues in the context of a particular increase. Congress could have established a price cap mechanism. Congress could have said that the rate shall meet the objectives in 3622B and the factors in 3622C. The commission shall establish a system for regulating rates, and the statute would provide for the annual compliance determination and the complaint process. If the statute had been written that way, then I think the answer to your question would be clear. It's not required. A review of these objectives and factors is not required when the Postal Service is actually seeking an increase. But that's not what the statute says. The statute says that the system must take into account the objectives and factors, and the annual compliance determination and the complaint process are separately established, congressionally established statutory procedures. Do you know if in those annual compliance reviews, do they actually go back and at that point take all the complaints that came in before the rate was adopted and analyze them and go through them and address them or not? I believe that the commission seeks public comment during the annual compliance determination and perhaps on its own also can look at the rates. I believe there have been some rates that have been adjusted under the annual compliance determination. But they've already got a bunch of public comment from the comment at the rate adoption stage, right? Like you commented before this rate came in and other people did as well. And to the extent they say, we'll deal with that later, do they take those comments from the rate making stage and deal with them automatically at the annual compliance review stage, or do you have to comment again? I certainly don't know that they automatically would review negative comments that came in during the first phase in the annual compliance determination. I certainly would comment again. I wouldn't take the chance personally that they would remember my comments. Right, but if it's part of this system, one would think you wouldn't have to comment again, that they would carry those concerns through and be obligated to address them. I agree with Your Honor, but I don't know that they do. You don't know one way or the other. I don't know that they do. I certainly would comment again. And I think that the problem with the annual compliance determination is that it's a year late. It's for rates that were in effect in the prior fiscal year. And the mailers have already paid. So this one came into effect in January? January 2019. So it'll be reviewed, and the annual compliance review is December, November, December? I think it starts in December and runs for a few months thereafter. So the mailers have paid the rates. They're not entitled to refunds. And this is hundreds of millions of dollars a year that the general public and small business may be paying improperly as a result of rates that may be unlawful. So I believe in the fairest reading of the statute is that Congress wanted some consideration in this regulatory system for considering objectives and factors. What do you make of the fact, Mr. Carlson, that there are these objectives and factors that shall be considered in establishing the system, but then there are also specific requirements, right? And requirements seem to be what is focused on more in the framework regulation. What do you make of that? Well, I think I read the requirements as minimum features of the commission's regulatory system. So it has to allow for review within 45 days. And I don't have chapter and verse memorized, but whatever else is in Section 3622. Those are minimum requirements, minimum features of the system. But the commission is given great latitude otherwise to design a system. And Congress was clear in the Senate report that they want to leave it to the commission who has better expertise on developing this regulatory system. And my concern with the statutory structure is that the commission has disregarded an important instruction in that legislation, which is to develop a system that considers the objectives and factors. Thank you. Thank you. May it please the court. Joshua Salzman on behalf of the commission. I'd like to begin actually where Judge Katsas was asking that line of inquiry. Because I think that that really highlights the central issue in this case, which is the requirements of the statute itself. Congress gave the commission, Section 3622A, a broad grant of rulemaking discretion and imposed a few requirements. The only requirement for the 45-day pre-implementation review, however, is found in 3622D1C. And specifically what it says is during that 45-day period, the commission is supposed to check for compliance with the price cap. Beyond that, there are no steps. So that's not what it says. It says not later than 45 days before it goes into effect. So you actually have all the time in the world as long as you're done. And in fact, you didn't do all this in a 45-day period. Your decision came out in November, which was about 75 days before the rate took effect. So I don't understand this 45 days of compressed time. Sure. And there was some discussion about how that statutory language should be understood at the time that the commission was first adopting its regulations. If you go back to order number 26, which was the first notice of proposed rulemaking here, there was discussion of whether or not the 45 days should be, whether that was just a minimum requirement on the Postal Service or whether that was something the commission itself was supposed to strive to act within. And what the commission determined, particularly acting against the backdrop of the PAEA, which was designed to get away from the evils of the shortcomings of the old system. No, I get that argument. My argument, mine is different. I heard your argument, it's we only have 45 days to do this review. And some of the statute says, it says not later than 45 days before, which means you have all the time in the world as long as you're done by 45 days before implementation. And so part of your scheme, you could say, Postal Service, you need to give us six months' notice before you do this, and we'll have all the time in the world. So I just, I haven't understood, and you didn't do everything within 45 days in this case. They started in October. You had a decision in November, which as I said, was like 75 days before the rates came into effect. So I don't understand what your point is about this 45 days. You don't have a compressed time frame and you haven't treated it as such. We certainly have a compressed time frame under the regulations themselves. The regulations require, and this is in 39 CFR 3010.11. It says, within 14 days after the close of the public comment period, the commission is supposed to issue an order that determines at least whether or not the rates comply with the. So that may be a self-inflicted harm. If you haven't figured, I mean, if you want to tie yourselves to that kind of time frame, then you better be able to do all the work that needs to be done within that time frame. But it seems odd for an agency to say, we know we have tons of time, but we're going to adopt a regulation that jams everything up. And then we're going to use that as the reason for not making the qualitative decision in advance. I think the commission very reasonably against the backdrop of the PAEA and the legislative history makes quite clear that the goal of this was to give, the reason there was this reform, the reason there was a move away from the old regime under the 1970 Act was because that process was too cumbersome. And that the commission understood that Congress's intent was for the commission to introduce a new streamlined procedure that would allow the Postal Service to be more nimble to react to change market conditions. But that is not what the statute says, right? That might be in the legislative history or in some of the post-enactment legislative history that's been cited. But it's not in the statute itself, which has a very different type of time frame scheme. Well, I think what the statute itself, as I think I heard Mr. Carlson concede at the end there, imposes relatively few strictures. So even if you were going to say, given that we are in a Chevron framework here and the court has consistently applied Chevron to commission regulations and commission orders under the PAEA. I think as long as this is a reasonable interpretation of the statute, then I think there wouldn't be any basis for invalidating it. And given the express grant of rulemaking authority in 3622A, the notice and comment that the commission went through that's detailed in order number 26 and 43, what you see is that the commission was striving to implement what it understood to be Congress's intent and to create a better system. There's a big difference between taking 18 months, like you did, like things could before, if they get really drug out, and jamming yourself up on 14 days, right? There's got to be something in between there. And so you said reasonableness review. And I guess I'm asking you, is it reasonable for the agency to, in a case like this, where there's serious qualitative challenges, under the qualitative factors, challenges to the rate to go, we don't have time, to put itself in a box that says we don't have time? I do, Your Honor. I think the commission has struck a reasonable balance here. What the statute requires is only consideration of one quantitative factor, the price cap, in the pre-implementation review period. The commission went further. The commission said, we're going to have other quantitative factors. We're also going to leave open a fail-safe, a break-open in case of emergency. This is an extreme case involving blatant disregard, where we will, on qualitative bases, disapprove a rate on the front end. But to be clear, you don't dispute that you have to apply the qualitative factors to the rates? It's just a question of when, before or after? Right. It's your scheme. I think that there needs to be consideration at some point, and there is consideration under the current scheme, as I think a merger is a first. Okay, but you have to consider those for a rate, and it's just a before or after decision? Yeah. That's what you want the deference to? The commission has consistently said it will consider this, but that the primary time to consider this is through those two post-review mechanisms, the annual compliance review and the complaint procedure. Okay, so the complaint review is not actually a review unless someone asks you to review. That's complete passivity, right? If no one files a complaint, you wouldn't review at all? Sure, but if Mr. Carlson had on January 21st... No, no, no. Let me clear what your scheme is here. So your scheme is we have to look at both quantitative and qualitative. Yes, Your Honor. We'll look at these quantitative ones before, and if there's something that seems to be a blatant disregard qualitatively, we'll do that before. Otherwise, we're going to do it after, but we're only going to do it after. Put aside the annual review for a second. If someone asks. Well, or under the annual review. Put that aside. So I'm trying to figure out if the complaint process does any work for you. I think it does. If the statute requires you to look at qualitative factors, and you say we'll only do it later if someone asks, would that satisfy the statute? So we're pretending that the annual review doesn't exist. I'm just asking you whether the complaint process does anything to help you. I think it absolutely does, Your Honor, because it allows people who are subject to unfair... If you look at, this is 3662. It puts a burden on the public to prove a violation of the qualitative factors rather than the burden, as I thought you had said it was, on the Postal Commission to find compliance in the first instance with qualitative factors. That's what the complaint process does. If I said that, I didn't mean to. No, but that's what a complaint process does. We'll do nothing unless you come and ask us. Sure, but in terms of what Congress envisioned here, Congress intended to give the Postal Service more pricing flexibility within the rate cap. So I don't think the idea that there should be a presumption that the Postal Service has to prove compliance on the front end is an appropriate way of thinking about this. What we have here is a system that allows at any time and raises complaints... I'm sorry, did you say... Oh, you go ahead. Oh, sorry. I mean, the statute also puts a burden on the Commission to devise a system which shall consider the objectives and factors, right? That's not a burden on the public to prove that through an ex post complaint process. So the statute says to devise as a broad grant of discretion to devise a modern system for postal rate regulation. The Commission considers this on the front end or has left itself leeway consistently to consider this in the 45-day window, and then the Commission can and does consider this in the context of the annual review. But pricing flexibility, which is the factor you said you most focus on, I mean, that's just one of the factors and objectives, right? Absolutely. But again, in the context of the annual review, the Commission is going to check for compliance with all of the requirements of Chapter 36. The requirements of Chapter 36 include all of the objectives and factors. And indeed, the Commission has in the past, in the context of one of these annual rate review proceedings, determined that a commission... that a postal rate was not in compliance with qualitative factors and has rejected it on that basis. And it reached this court, actually. The case was USPS versus Postal Regulatory Commission, 676 F3-1105. Similarly, the Commission has used the complaint process. So in that case, or in any of these cases, you heard my question to Mr. Carlson, so you've got commenters who have already objected on qualitative factors to this price increase. Do you, in your annual compliance review, go back and say, okay, now it's time to answer those and deal with those, or do they have to comment again during the notice period that you have for annual compliance review? So my understanding is that there's not an automatic process by which the complaints are transferred over, but there is a new opportunity for public comment within the statute under Section 3653, subsection A. And moreover, the Commission itself... It sounds like it's not part of the system. But the Commission also has an independent obligation, irrespective of the comments, to check for compliance at that stage with the requirements of Chapter 36. So the Commission's review isn't limited to what's raised by public comment. The Commission has the ability to sua sponte consider any question of whether the rates are operating in compliance with Chapter 36. Why is it reasonable, though, to leave that until the annual review, as opposed to on the front end? I mean, it seems to be the argument is, because we have to do this in 45 days. But as Judge Millett pointed out, I mean, that's not what the statute says. So there's a trade-off that's going to happen here between whether you're going to vet the rates as closely and as rigorously as possible on the front end before they're allowed to take effect, which has definitely certain benefits for the public, but also comes at substantial cost to the Postal Service. Or you can allow the Postal Service to implement the rate change, and then review on the back end, and still provide an opportunity. The old system under the 1970 Act struck the balance extremely in one direction. It said, we're going to go through 18 months of litigation to decide what the rates are. And Congress found that that hamstrung the Postal Service too much, and deprived it of the ability to respond to changing events. The PAEA represents an attempt to strike a new balance. Are there costs to that? Yes, there are. But again, there's costs in the other direction as well. And the trade-off that I think the PAEA envisions, and certainly the Commission's implementation, is reasonable and consistent with the text of the PAEA, was to say... Can I ask you about the annual compliance review? Because that's reviewing a lot of stuff. And rates are just one thing, I take it, that's reviewed annually. It's all kinds of Postal Service operations. There are other things that are the subject of the annual compliance review. And that whole review process takes about how long? So there's 90... The way it works is the Postal Service submits a report, and then the PRC has 90 days from the submission of that report to complete its review. But at that point, it has the benefit, if I may, Your Honor, of having seen the rates in operation for a year, it's dealing with real data, and also has had more time with the rates in existence, which helps facilitate the review. But how much... How big a role is rates normally in the annual compliance review? How much time is spent on that versus all of the other things that are listed in the statute for them to address? I'm not sure about that, Your Honor, but I do know that there is precedent of the Commission identifying rates that happened in the 2010 annual compliance determination, that, as I mentioned, ultimately found its way to this Court in that USPS versus PRC case I cited before. This is something the Commission does, and that's the mechanism through which the Commission has decided it can best strike the balance between giving the Postal Service the pricing flexibility and the ability to change rates in response to changing conditions, while still ensuring that the 3622 factors and objectives are respected. Can you point to something in the statute that suggests this has to be done in a quick time frame, that the tradeoff Congress made is in favor of doing this quickly? And to be clear, I'm just going to speak to statutory text now, and then the legislative history and the comments that the Commission received during the regulation process I think overwhelmingly support that position. But in terms of the text itself, I think the best I have is 3622 D1, which it says has that 45 day. But all that says is that the Commission has to do all of these things not later than 45 days, which includes not just providing notice, but also the review of the Commission. All of that has to happen before 45 days. I understand that, Your Honor. But again, once this Court has repeatedly cited the Senate report, for example, Mr. Carlson invoked it as well, in understanding the PAEA, that Senate report gives substantial additional support for the idea that the Commission was supposed to move quickly here. The Commission then, recently after going through notice and comment, I understand that this isn't legislative history even and that's something else, but the lead sponsors of that legislation were among the commenters and many others who came in and said that there was an expectation that the Commission would use the pre-implementation review process primarily for the price cap, and that then there would be other opportunities. But Congress didn't say any of that in the statute, right? All they were concerned was that the public would have 45 days before any finalized rate went into effect. That's all the statute said. That's all that's in the statute, but the statute also then grants substantial discretion under 4622A to the Commission to devise a system. So even if we're going to ignore the Senate report, ignore all the public comments the Commission got, ultimately, at the end of the day, the question is, is this inconsistent with the statute? Is there anything here that's contrary to statute? And I really haven't seen Mr. Carlson say anything that says there's anything in the statute, as Your Honor says, let's focus just on 3622. There's nothing in 3622 that says the pre-implementation review period discussed in 3622D must include an evaluation of the factors and objectives under B and C, and moreover, even if the statute had such a requirement, and I'd submit that it doesn't, I'd note that the Commission in this case did perform admittedly cursory, but it did look at those factors. The Commission's rules do require the Postal Service in its notice that it submits with a proposed rate change. This is in 39 CFR 3010.12 B7. One of the things the Postal Service is required to do in its notice is include a discussion that says, here is how our proposed rate change conforms to the factors and objectives, thereby allowing the Commission to at least take a quick look and identify those cases of weight and disregard. Could I ask if we're done with this line, suppose you're right about the statute. You still have a final order that's subject to APA review, which includes a duty to explain and respond to comments, and the rationale you put out was that a 5 cent increase would be convenient because people don't have to count pennies or whatever. And there were some pretty powerful objections to that in the comment period, and there was essentially no discussion of it in the final agency order. So why isn't it arbitrary and capricious for that reason? So I want to be clear here. I'm counsel for the Postal Regulatory Commission, not for the Postal Service. The thing about the pennies and the 5 cent increments, that was in the submission that I referenced a moment ago that was made by the Postal Service in their notice to the Commission itself. The Commission didn't expressly adopt that, but in terms of getting at your underlying question here, the reason I think that the Commission's order is fine here is because of the way the regulations are structured. And in all the regulations I'm going to cite are in 39 CFR 3010. This is going to be .11 subsection D and subsection K. And what subsection D says is the Commission's order... 11... Subsection D says at a minimum the Commission is going to decide the quantitative elements. It's not going to necessarily discuss anything else. And then on top of that in subsection K, what the Commission says is if we do discuss anything else, that is not our final word on the matter by any means and is not preclusive of revisiting the issue. So I think the structure is set up to facilitate the fast review and that if Mr. Carlson, instead of filing this appeal on January 21st, had filed a complaint, that would have teed this process up. So it's not only consideration of the qualitative statutory factors that they can defer. Your theory is they can also defer consideration of just any old comments that come in? What my... What I'm saying is that the Commission's order is the final order of the Commission on the quantitative factors. The Commission also... Is this a merits argument or a finality, jurisdictional kind of argument? I think the strong form of it would be to frame it in the latter. I think we've argued it more as the former. But in either sense, when you're dealing with a circumstance where the Commission has said the overwhelming focus in order after order, what the Commission has said is we view the 45-day period as principally a chance to discuss the quantitative factors. The regulations urge the public commenters to focus their comments on the quantitative factors. As a fail-safe, the Commission has also said we want to leave open our ability in the event of blatant disregard to consider other things at that stage as well. We understand that review is going to be preliminary. We will accept public comment on this. I think it's in subsection C of that. I think it's in 11B or 11C. It says that the public can is encouraged to focus their comments on the quantitative. We will take comments on the other. But anything we do at this stage is necessarily tentative because it's only two weeks. If there's something really bad, if, as was the case in Order 191, there's an attempt to raise one rate by more than $200,000, a 963% increase, that's the kind of situation where it's sufficiently a red flag that the Commission will act then. Otherwise, it is deferring the issue. I hear you, but it sounds a little bit like the upshot of that regulation is that the Commission is trying to exempt itself from the strictures of reasoned decision-making. I don't think it is, Your Honor. I think what the Commission is trying to do is strike a balance. The Commission absolutely understands the need to engage in reasoned decision-making and has provided opportunities, and there are opportunities through both the complaint procedure and the notice and comment with the Annual Compliance Review, where the Commission has to engage with the commenters on things like the qualitative factors. What the Commission wanted to do, and all of this is explained in the rulemakings at Order 26 and Order 43, was to leave, was to focus the pre-implementation review on the quantitative factors, which is wholly consistent with the statute, and then to just leave itself a little room. And the fact that the Commission chose to accept public comment here, I don't think was necessarily the intention. Leave her a little room. What is the test for blatant disregard? I get the 2,000, but it can't just be a big number. If they came to you and said, we like nickels. We like nickels. We'd like more nickels in the register drawer. We're going with a five-cent increase. And the Commission blew by it, just like it did here. Would that be something to be caught up from? Not necessarily, Your Honor. Again, I want to emphasize that the Postal Service here, by the way, said more than just, we think five cents is easy. If you read JA-9 to JA-11, the Commission, the Postal Service explained why it was structuring rates the way it did. It wanted to increase the difference between metered letters and stamped letters because it recognized that the Postal Service covers its costs better in the context of metered letters and was trying to steer customers towards metered letters. Except we want to retain those non-pre-sort customers, which I assume is not metered customers. What's a non-pre-sort customer? Is that someone who pays with nickels? I don't believe so, Your Honor. What's a non-pre-sort? My understanding, and I'm hesitant here because we're going a little bit beyond my knowledge. Well, this is the page you referred me to. It is. And I just want to emphasize, the only point I was trying to make here was that the Postal Service provided an additional explanation. It identified customers it thought were at risk for electronic diversion. It emphasized that it was trying to help small businesses. There were other comments made in there. In terms of pre-sort, my understanding is you can put a stamp on a letter, you can use a postage meter to pay for a letter or the customer can do some of the work of sorting the letters when you're talking about mass mailers that can come forward. So I think there's a universe of people who use postage meters but are not pre-sort customers. But again, we are now at the outer perimeter of my understanding here and I hesitate to go. Imagine this is a general principle though in other regulatory contexts. I mean, you know, is it really the case that a statute can set out a number of factors and an agency can write a regulation saying we're going to focus on some factors today and we're going to put up other factors later. So think about, for instance, like in the EPA context, right, could you have a statute that says look at the best available science and costs and the agency says we'll just look at costs up front and maybe after the regulation goes into effect we'll take a look at the science. I mean, can you think of another context where this would be reasoned reasonably? But I think that doesn't describe this case. And the reason it doesn't describe this case is it's not that the commission has said we will consider some factors and objectives in detail on the front end. There are almost no factors and objectives. Right, it doesn't. What it considers on the front end are other statutory requirements. It considers the price cap which is in 3622D. It considers the work share rates which are in 3622E and one other quantitative factor that's also part of a separate statutory provision. So the commission isn't cherry picking objectives and factors to consider in the pre-implementation stage. And one of the commission's orders that we've cited actually details the fact that the reason it prioritizes these three elements and I believe it's order number 536 is because it views them as freestanding, that they are separate requirements that are not just part of objectives and factors that have to be applied in conjunction with each other and balanced against each other. That's a difficult detailed process whereas a work share... It prioritizes a system that takes those into account. And it did. The question is just the pre-implementation review phase here. For the pre-implementation review, the focus is overwhelmingly on those three quantitative elements that are not found in 3622B or C. Suppose the commission had passed a regulation which said please submit whatever comments you want in the pre-implementation review but we will only consider the hard quantitative requirements and we will neither address nor explain anything else. We'll just take those comments and put them in the file and look at them in the annual review. Would that be lawful? I can't think of why that would be... It certainly wouldn't be inconsistent with the statute here and I don't think it would be a problem under the Administrative Procedures Act to the extent that the ultimate action that the... Assuming that it is lawful and I think I've explained at length why it is, that for the commission to focus the 45 day review period on the quantitative factors. I don't see why once the commission agrees to accept a public comment it necessarily imposes on itself a requirement to respond to every one of those comments. Just as the commission has imposed on the Postal Service a responsibility in that B12 subsection the regulation 12B7 to submit a discussion of the factors and objectives. But in doing that the commission wasn't intending to bind itself to then review. That didn't become a back door for imposing on itself an obligation to review the qualitative factors. I guess the theory would be it's the APA that had the obligation. That would have to be... It makes the final order reviewable. It's just a little bit odd. The way the regulation works the notice has to address all of the qualitative factors and the comments can address all of the qualitative factors. It seems like you've started pretty far down the road of at least creating the duty to explain. So in order number 43 what the commission said in order number 43 is we can't be sure on the front end what's going to be significant. We know we have a short window. We're pretty sure in the vast majority of cases that means we're just going to focus on the quantitative. But we want to have the ability in order to respect the objectives and factors we want to have at least the opportunity to do something. It's an escape valve for the 900% case. Is there a definition of what counts as blatant disregard? We can all go and have a percentage that has a lot of zeros but that surely is not a meaningful standard. What's a meaningful standard? I think that this is going to be developed through adjudication. There's not a regulation that spells it out. There's only been one instance so far that had a lot of zeros. And this case which involves a rate increase that's just a couple of pennies above what Mr. Carlson... Would just flatly reading the statutory text wrong if they said we think that one of these factors means Congress wants us to divide by five. They picked some factor and they said we think that one means Congress wants us to divide by five. I'm not saying we could. They think Congress has directed us to divide by five. And of course I don't think anyone would say there's a Chevron step one command to divide by five here. It would just be a total misreading of the statute. Would that be caught under blatant disregard or does it really have to be so in their face with lots and lots of zeros? That's the best they can do before it takes effect? Again, this is something the commission is developing through adjudication. There's been one case... It doesn't give me a lot of comfort to know whether that that's really... You're calling it a safety valve. I'm not sure what kind of safety valve it is to the extent we're supposed to factor that into analysis. The fact that there's only been one case could be read one of two ways. One is that it's not a meaningful safety valve or for the most part the Postal Service has been submitting rates that respect or at least are within shouting distance of the... You can't tell us which that is because you don't know what it means? The commission doesn't know what it means. No, that's not what I'm saying at all, Your Honor. What I'm saying is that there has been one instance in the past where it was sufficiently blatant that the commission felt that it was a special circumstance that compelled action at the pre-implementation phase. Totally misreading statutory tax would not count as blatant disregard? I'm honestly not sure. I need to understand the full context of what else the Postal Service was saying in support of the rate change. If the rate change was zero because the Postal Service misunderstood the statute, I don't think the commission would necessarily strike down the zero rate change just because there had been a change in the statute. Ultimately what the commission's job is to do is to review the overall and keep in mind we're talking about just one rate, what the commission calls one rate cell, out of a very much larger attempt to change rates here. And it analyzes looks at them in totem first of all for compliance with the quantitative factors. On the front end it is going to take a quick look or has at least left itself the right or the opportunity to take a quick look to see if there's something egregious on a qualitative factor. And then it will do the review on the back end either through... If they wanted to split up the time, the period post-implementation review what is the reason basis for saying that post-implementation review is going to come as much as a year later as opposed to simply saying after it takes effect within the next 30 or 60 days? Did they give an explanation for why they couldn't have a system like that? I don't remember any commenters suggesting that system. They're the experts. They can think of things themselves. They can. I don't see anything in the statute that requires it. What caused them to go all the way to the annual compliance review rather than... Normally if an agency was going to split it up and had the reasons that you've advanced reasons, they've advanced the reasons that you've shared with us Okay, we can't do it then but normally then what happens is they do it shortly thereafter. And there seems to be some evidence for that. I just couldn't figure out why they wanted to wait so long. The annual compliance review comes from the statute. It's in 39 U.S.C. 3653. They also recognize that if there are interested parties, and Mr. Carlson could be one, there certainly have been commercial interests in the past who've been interested parties who feel that the issue is sufficiently pressing that they can raise it through the complaint procedure which doesn't have any delay on it and can be invoked at any time. And again, Mr. Carlson could have put this before the commission a few months ago already. So I think the answer is the commission just didn't consider doing it sooner on its own? I'm not aware of anything I'm not recalling anything in the commission letters where that was a proposal that was actually discussed. Could I ask you just before we finish up about the notice? Because regardless of what you must consider by statute, the regulation requires the notice to address the qualitative factors, how the rate adjustment helps achieve the objectives and the factors. It does, Your Honor. So that notice seemed, relative to that requirement, the notice seemed pretty thin to me. So there's a discussion in two places, JA 9 to 11 and then again on JA 31 there is discussion by the Postal Service and their notice of these factors. And maybe it could have been more wholesome, but I don't think that means that the commission's decision not to change makes the commission's order here arbitrary and capricious. I think what the commission's order says is that we have considered the comments here, we've looked at the Postal Service's notice, and we think that this ultimately falls within the bounds of the pricing flexibility. So the commission, even if the notice, even if the Postal Service violated that regulation, just assume for the sake of argument, with the notice, the commission could still lawfully approve a rate increase pre-implementation. I would take issue with, I don't agree with the initial I understand. I think it would be a tougher case if the Postal Service had submitted nothing. If there was just on the face of it, a defect in the notice, such that there was nothing that even purported to be the B7 statement, I think in practice, what would probably happen there is there is room for iteration in all of this, and it's likely the commission would have gone back to the Postal Service and identified that. But here, where you have something that absolutely is a discussion of the requirements and factors, B7 is not written at a level that requires, again, we're talking about changing many hundreds of rates here. It doesn't require a level of granular discussion of each individual rate and a justification for each rate under the objectives and factors. It talks about the overall price change as needing to be consistent with objectives and factors. So I think here, the commission did not engage in unreasoned decision-making in accepting that submission. I just had one more question about the blatant disregard. The prior example I think, was it like a 1,000% increase? 963%. Was that a violation of a quantitative standard? It was not. The commission expressly found that the rate change here, the overall rate change, because keep in mind that operates at what's called the class level at several steps up from the individual rates here, that the overall changes complied with the statute on a quantitative basis. It matched the price cap and the other quantitative factors. But what had happened here was the Postal Service was a very small group of mailers. It was a professional group of mailing agents and had increased their rates by nearly tenfold. This was a $226,000 increase. So because the price cap operates at the class level, even though you have this gigantic increase for one small unit, the overall group, the overall concern there was purely quantitative and how much was getting assigned to one unit within that classification. It was still sort of an allocation of the quantitative pain, I suppose. But when you've summed it all up, the quantitative requirements were met. The change as submitted by the Postal Service was consistent with the price cap. I understand, but just to be clear, it was just a quantitative how they assigned it within the classification. It was the number that was the problem. So it was the number... Putting all the burden under one unit, or too much of the burden under one... I think the classification has all these different pieces. So whatever you want to call them, they put it all in this one box, as opposed to spreading the pain. That was certainly a piece of it. It was described as one of the things that the Postal Service is not supposed to engage in is unfair discrimination. And it was unfair discrimination by singling out this one discrete group of mailers for this much, much higher rate. Thank you. Thank you, Your Honors. Your Honors, this case is a blatant disregard case. The Postal Service singled out the general public and small business mailers for a record large increase. And the Postal Service blatantly disregarded at least three factors. The assertion that 5-cent rounding leads to simplicity of structure was thoroughly debunked by the comments. The Postal Service ignored the effect of the rate increase on the general public, except by noting that the additional allowance rate would drop. So therefore, 3% of the mail would pay a lower rate, and 97% would pay a higher rate, and somehow that was supposed to mitigate the effect on the general public. And also, one of the objectives to create predictability and stability in rates, there was a comment from a large mailing association that said that the pre-sort mailers can expect higher increases in the years in which the single-piece rate may not see an increase. So instead of the prior state where the rates were generally increasing by the amount of the CPI, now we have a big increase for the general public, small increase for pre-sort mailers, maybe next year it's no increase for the general public, and a larger increase for pre-sort mailers, and then at some point the cycle will flip. So predictability and stability, which were very important, are now being undermined. On the point of Chevron, the commission would be entitled to deference on how it implements the statute and how it designs its regulatory system. For instance, does it have one round of comments or two, or how does it interpret the statutory factors? But the commission is not entitled to deference on whether it implements the requirement for the system to consider the factors. So, I believe I have one more minute coming for my rebuttal. So, on the legislative history question, the Senate report is very clear that the Senate was aware, that Congress was aware of the 45-day period, the 45-day period is short, and they expected the commission to deal with it through regulations. I would encourage the court to look at the commission's orders, where they established this system, and it's remarkable the inferences or claims about congressional intent that the... Is part of your concern that when you talk about blatant disregard, I'm just trying to understand your argument, is it also that you think the... Under the APA, the APA requires the commission to respond to the comments that come in in a more timely fashion? Well, I believe... I believe a reasoned explanation in the order approving the price increase is at minimum necessary. So before, you think it has to all be done pre-implementation? That's right. At least a response to the comments that explains why the commission does or doesn't think they meet the blatant disregard standard. So I think on the commission's orders, they just make claims about what Congress supposedly wanted, and there's no evidence for it. There's no evidence in any of legislative history that we've seen, and so it's led us to this position where the system doesn't consider the statutory factors until it's far too late, and justice delayed is justice denied. Thank you. Thank you. The case is submitted.
judges: Millett, Katsas, Rao